UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SALEH AHMED,

    Plaintiff,

v.

Case No. 15-13037
HON. DENISE PAGE HOOD

PORT CITY MARINE SERVICES, INC.,

    Defendant.
_____/

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT [#29]**

## I.    INTRODUCTION

On June 21, 2017, Defendant filed a Motion for Summary Judgment. [Dkt. No. 29] The Motion has been fully briefed. The Court, having concluded that the decision process would not be significantly aided by oral argument, previously ordered that the motion be resolved on the motion and briefs submitted by the parties. E.D. Mich. L.R. 7.1(f)(2). [Dkt. No. 38] For the reasons that follow, the Court grants Defendant's Motion for Summary Judgment.

## II.    BACKGROUND

Plaintiff was hired by Defendant on or about June 14, 2014. He was certified as fit for duty though September 24, 2015, as evidenced by a "Seafarers Health &

1

Benefits Plan Fitness for Duty Certification. Dkt. No. 33, Ex. 3. On March 30, 2015, Plaintiff signed aboard the ITB Bradshaw/St. Mary's Conquest as a deckhand and supplied a "Crewmember Declaration" attesting to his fit for duty status. Dkt. No. 33, Ex. 5.

In early April 2015, the hydraulic arms that activated gate numbers 11 and 12 in hold 6 experienced breakdowns, and they were not working on April 11, 2015. Dkt. No. 33, Ex. 6 & 7. As a result of those breakdowns, there was cargo overload on the conveyor belt and massive spillage of cement onto the tunnel deck of the St. Mary's Conquest on April 11, 2015. On that day, Plaintiff was responsible for shoveling cement off of and then back onto the conveyor belt for over 6 hours straight. Plaintiff states that he was forced to shovel in cramped and ergonomically hazardous conditions, which caused pain in his back and fatigue. Plaintiff represents that the shoveling he had to do as a result of the cargo overload and spillage was not part of his normal job duties but the result of a breakdown and malfunction of the vessel's cargo gates. After shoveling the cement cargo for 6 hours, Plaintiff had to pound the vessel's cargo holds with a 10 pound sledgehammer, all the while bent over due to the cramped and ergonomically hazardous conditions.

Plaintiff states that his duties on April 11, 2015 caused him to sustain injuries to his right shoulder, neck, and back, which he reported to his immediate supervisor

(Courtney King) and the on watch mate (Talaat Abdelmaguid). In his "Personal Injury Report To Be Completed By Injured Employee," he indicated that he injured his right shoulder and back "when use the big hammer to get the rest of the cement of cargo number 6 and number 3 cargo more than 4 times per side." Dkt. No. 33, Ex. 13. According to several witnesses, "beating" the cargo holds with a sledgehammer to knock cargo loose was not standard procedure, though using one to pound or tap the cargo hold was not unusual. *See, e.g.*, Dkt. No. 33, Ex. 1 at 50 ("It's more of a tapping for an indicating [sic] that would be the first thing. The pounding to knock cargo loose, it's not standard to beat on it, it's bang on it and see if you can get it to move. It's not beating on it to make it move that way."). Plaintiff and his fellow deckhand testified that the pounding had to be in a bent-over, cramped position and that it could hurt a lot. Dkt. No. 33, Ex. 10 at 18.

Plaintiff signed off the vessel on April 20, 2015, and he has not returned to employment with Defendant or undertaken any other gainful employment since suffering the injuries aboard the St. Mary's Conquest in April 2015. In May 2015, Plaintiff was diagnosed with rotator cuff tendinopathy with associated posterior superior glenoid labral tear in his right shoulder, as well as cervical and lumbar pain with radiculopathy in his neck and back. In October 2015, Plaintiff had an invasive operative procedure, including extensive debridement of the shoulder, complete

3

synovectomy, AC joint re-section, acromialplasty, arthroscopic rotator cuff repair, and SLAP repair. On April 20, 2016, Plaintiff underwent an invasive surgical procedure on his cervical spine that involved anterior cervical decompression infusion, C4-C6, and anterior cervical instrumentation, C4-C6 using Medtronic Zevo anterior cervical plate.

## III. APPLICABLE LAWS & ANALYSIS

### A. Standard of Review

Rule 56(a) of the Rules of Civil Procedures provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The presence of factual disputes will preclude granting of summary judgment only if the disputes are genuine and concern material facts. *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Although the Court must view the motion in light most favorable to the nonmoving party, where "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenth Radio Corp.,* 475 U.S. 574, 586 (1986) ; *Celotex Corp. v. Caterett,* 477 U.S. 317, 323-24 (1986). Summary

judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material face," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex Corp.*, 477 U.S. at 322-23. A court must look at the substantive law to identify which facts are material. *Anderson*, 477 U.S. at 248.

**B.     Analysis**

Plaintiff's claims are brought under the Jones Act and general maritime law based on a direct physical injury he contends was caused by the negligence of Defendant and the unseaworthiness of the ITB Bradshaw McKee/St. Mary's Conquest. The Sixth Circuit has stated:

> Our application of the Jones Act must follow the judicially developed doctrine of liability granted to railroad workers by the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51 et seq. The Jones Act is modeled after, and specifically incorporates, FELA, which provides for liability when an injury results "in whole or in part" from the negligence of the employer. *See* 45 U.S.C. § 51. *See also O'Donnell,* 318 U.S. at 38, 63 S.Ct. at 489. In *Rogers v. Missouri Pacific Railroad Co.,* 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957), the Supreme Court held under FELA, and by reference the Jones Act, that "the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought." *Id.* at 506, 77 S.Ct. at 448.

5

Our interpretation of the Jones Act relies substantially upon the general principles of maritime law "unknown to the common law. These principles include[ ] a special solicitude for the welfare of those men who ... venture upon hazardous and unpredictable sea voyages." *Moragne v. States Marine Lines,* 398 U.S. 375, 387, 90 S.Ct. 1772, 1780, 26 L.Ed.2d 339 (1970). *See also* G. Gilmore & C. Black, *supra,* at 1-11, 253. Moreover, "it is a settled canon of maritime jurisprudence that '"it better becomes the humane and liberal character of proceedings in admiralty to give than to withhold the remedy, when not required to withhold it by established and inflexible rules."'" *American Export Lines, Inc. v. Alvez,* 446 U.S. 274, 281-82, 100 S.Ct. 1673, 1677, 64 L.Ed.2d 284 (1980) (quoting *Moragne v. States Marine Lines,* 398 U.S. 375, 387, 90 S.Ct. 1772, 1780, 26 L.Ed.2d 339 (1970) (quoting *The Sea Gull,* 21 F.Cas. 909, 910 (No. 12,578) (CC Md. 1865))).

In *Sony-Vacuum Co. v. Smith,* 305 U.S. 424, 59 S.Ct. 62, 83 L.Ed. 265 (1939), the Supreme Court explained that Congress intended the Jones Act to expand, not limit, admiralty's protection of its wards:

> The seaman, while on his vessel, is subject to the rigorous discipline of the sea and has little opportunity to appeal to the protection from abuse of power which the law makes readily available to the landsman.... He cannot leave the vessel while at sea. Abandonment of [the vessel] in port before his discharge ... exposes him to the risk of loss of pay and to the penalties for desertion.... Withal, seamen are the wards of admiralty, whose traditional policy it has been to avoid, within reasonable limits, the application of rules of the common law which would affect them harshly because of the special circumstances attending their calling.

*Id.* at 431, 59 S.Ct. at 266. Thus, for these reasons, the Jones Act justifiably affords the seaman a right to recover damages arising from maritime torts. *See id.* As remedial legislation enacted for the protection and benefit of the seaman, the Jones Act "is entitled to a liberal construction to accomplish its beneficent purposes." *Cosmopolitan Shipping Co. v. McAllister,* 337 U.S. 783, 790, 69 S.Ct. 1317, 1321, 93 L.Ed. 1692 (1949). *See also Garrett,* 317 U.S. 239, 248, 63 S.Ct. 246,

252, 87 L.Ed. 239 (1942); *Socony-Vacuum Co.,* 305 U.S. at 431, 59 S.Ct. at 266.

*Daughenbaugh v. Bethlehem Steel Corp., Great Lakes S.S. Div.*, 891 F.2d 1199, 1204 (6th Cir. 1989).

A Jones Act "plaintiff asserting a cause of negligence against [his] employer must prove the traditional common law elements of negligence: duty, breach, foreseeability, and causation." *Hardyman v. Norfolk & Western Railway Co.*, 243 F.3d 255, 258 (6th Cir. 2001) (quotations and citations omitted).

> Under the Jones Act, a seaman may recover damages for personal injury caused by a shipowner's negligence. 46 App. U.S.C. § 688. *See Perkins v. Am. Elec. Power Fuel Supply, Inc.*, 246 F.3d 593, 599 (6th Cir. 2001), *cert. denied*, 534 U.S. 994, 122 S.Ct. 462, 151 L.Ed.2d 379 (2001) (No. 01-325). Negligence is determined under the normal ordinary prudence standard. The defendant must breach a duty to protect against foreseeable risks of harm. *Id.* at 599. After negligence is proven, the plaintiff need only show that the shipowner's negligence is the cause in whole or in part of his injuries. In essence, there is a reduced standard of causation between the shipowner's negligence and the seaman's injury. *Id.* at 598.

*Rutherford v. Lake Mich. Contractors, Inc.*, 28 F.App'x 395, 397 (6th Cir. 2002).

In *Syzmanski v. Columbia Transp. Co., a Div. of Oglebay-Norton Co.*, 154 F.3d 591, 595 (6th Cir. 1998) (*en banc*) (emphasis in original), the Sixth Circuit held that:

> [C]laims brought under the Jones Act and claims of unseaworthiness brought under general maritime law are distinct causes of action, the elements of which differ somewhat. The panel also correctly identified the salient differences: the applicable standard of liability, and the applicable standard of causation.

7

> However, it is also necessary to consider the nature of the *injuries* for which a plaintiff may seek a remedy under the two causes of action. We conclude that, despite their other differences, the two cause of action are uniform in the injuries they reach. Where an injury is not remediable under the Jones Act, as we hold is true here, neither can the doctrine of unseaworthiness offer redress.

Plaintiff contends that Defendant, as employer, had certain duties under the Jones Act, including the duty to: (1) provide a reasonably safe place to work (citing *Bailey v. Central Railway*, 319 U.S. 350, 352-53 (1943)); (2) provide reasonably safe tools and equipment (citing *Baltimore & O.S. R.R. v. Carroll*, 280 U.S. 491, 496 (1930)); and (3) warn employees of unsafe working conditions (citing *Terminal R.R. Ass'n. v. Howell*, 165 F.2d 135, 139 (8th Cir. 1948)). Plaintiff asserts that a vessel owner's duty to provide a seaman with a safe place to work is an absolute duty. Relying on *Interocean S.S. Co. v. Topolofsky*, 165 F.2d 783, 784 (6th Cir. 1948); *Rannals v. Diamond Jo*, 265 F.3d 442 (6th Cir. 2001). Plaintiff argues that he suffered a direct physical injury to his right shoulder, neck, and back because Defendant failed to provide: (a) a safe place to work and sufficient, adequate tools and equipment; and (b) competent supervision and manpower to carry out the unloading procedures safely.

Defendant asserts that there is no evidence that Plaintiff was injured by any equipment malfunction, broken equipment, or other impact. Defendant relies, in part,

on *Gotschall v. Consolidated Rail Corp.*, 512 U.S. 532 (1994) and 56 F.3d 530 (3rd Cir. 1995) (on remand), *Syzmanksi, supra* (holding that a seaman's claim of physical injury (a heart attack) allegedly arising from job-related stress is not actionable under either the Jones Act or the doctrine of "unseaworthiness"), and their progeny. Defendant argues that those cases stand for the proposition that, absent any physical impact, an injury is not compensable when an employee is engaged in the ordinary course of employment. Defendant contends that Plaintiff's injuries stemmed from hard work – but not dangerous work – performed by Plaintiff. Defendant states that the shoveling by Plaintiff and Plaintiff's use of a 10 pound sledgehammer were normal components of his job.

The Court concludes that Defendant is entitled to summary judgment, even though Defendant's reliance on *Gotschall* and *Syzmanski* is misplaced. *Gotschall* assessed "claims essentially based on infliction of emotional distress," *Syzmanski*, 154 F.3d at 594 (citing *Gotschall*, 512 U.S. at 555-56), and there is no suggestion of the infliction of emotional distress in this case. In *Syzmanski*, the plaintiff suffered a heart attack weeks after leaving a job he contended involved stress that caused his heart attack. That court declined to extend the rule that recovery is permissible for "injuries caused by physical stress" to injuries "caused by non-physical stress," particularly as

the plaintiff was engaged in the ordinary course of employment. *Syzmanski*, 154 F.3d at 595.

The Court assumes, as it must when considering Defendant's Motion, that: (a) the hydraulic arms on the cargo gates malfunctioned, which together with the malfunctioning conveyor belt, caused cargo overload on the conveyor belt and massive spillage of cement onto the tunnel deck of the St. Mary's Conquest on or about April 10, 2015; (b) Plaintiff suffered injuries to his right shoulder, neck, and back; (c) his injuries resulted from shoveling cement and use of the sledgehammer; and (d) the area in which he had to perform the shoveling and use the sledgehammer was cramped.[1]

Plaintiff argues that he would not have had to shovel and pound with the sledgehammer but for the breakdowns of the hydraulic rams that resulted in the cargo overload on the conveyor belt and massive spillage of cement onto the tunnel deck of the St. Mary's Conquest on April 11, 2015. Plaintiff states that the amount of cement spillage was abnormal and that he had to "shovel the very heavy cement off of and then back onto the conveyor belt under extremely cramped and ergonomically

---

[1] The Court does not assume, and neither it nor a jury could find, that Plaintiff had to perform in ergonomically hazardous conditions because no scientific (expert) evidence regarding ergonomically hazardous conditions has been proffered. The only suggestion of ergonomically hazardous conditions is the argument using that term in Plaintiff's response brief.

hazardous conditions over periods extending more than 6 hours at a time." Plaintiff also contends that the 10 pound sledgehammer weighed more than the normal sledgehammer used by deckhands.

Plaintiff's argument that his injuries are attributable to inadequate or malfunctioning equipment, specifically the cargo gates and conveyor belt and skirts, and incompetent conveyorman is misplaced. As Plaintiff's argument in his brief and his testimony demonstrate, he was injured when he used a shovel to lift the cement spillage and the 10 pound sledge hammer to pound the cargo hold. Even though the spillage resulted from the malfunctioning hydraulic rams and other equipment, and even if the spillage was abnormally large, those factors did not cause Plaintiff's physical injury.

The equipment malfunctions and incompetence of the conveyorman caused the spillage of cement onto the tunnel deck of the St. Mary's Conquest on April 11, 2015. These were simply factors that caused the massive cargo spillage. Neither the spillage nor the malfunctioning equipment caused any direct harm to Plaintiff (such as by Plaintiff being struck by the equipment or the spillage). Only after Plaintiff undertook to shovel the spillage and use the sledgehammer was he injured. Stated another way,

if Plaintiff had not used the shovel or the sledgehammer, the defective equipment and incompetent conveyor would not have caused Plaintiff to suffer any injury.[2]

The Court notes the many parallels between the instant case and *Rutherford*. The *Rutherford* plaintiff suffered a back injury when he passed a steel cable from a tugboat to another deckhand on a barge. The steel cable was much heavier than a synthetic cable that was also used on the vessel. The court rejected the plaintiff's argument that the risk of back injury was foreseeable because others had complained of sore backs. The court found that complaints of other workers that they suffered sore backs from handling the steel cable did not lead to the reasonable conclusion that the defendant vessel owner knew or should have known that back injury could result from one deckhand lifting a steel cable.

The *Rutherford* court noted that there was no evidence that the plaintiff or any crewman had brought the issue of sore backs to the vessel owner's attention, stating that "[i]t is a fundamental principle that, under the Jones Act, an employer must have notice and the opportunity to correct an unsafe condition before liability will attach." *Rutherford*, 28 F.App'x at 397 (quoting *Perkins*, 246 F.3d at 599). Likewise, Plaintiff has not produced any evidence that Defendant had reason to foresee that Plaintiff was

---

[2]In his response brief, Plaintiff seems to argue that there was a cumulative effect of working "under conditions likely to bring about . . . harmful consequences." Dkt. No. 33, PgID 261. Plaintiff's pleadings do not allege any claim based upon cumulative work conditions, and the Court declines to address this argument.

at risk of suffering the injury he did while performing tasks that Plaintiff and others had performed routinely without incident. There is no evidence that Plaintiff or any other employee had made Defendant aware of any injuries suffered performing such tasks – or that such tasks were dangerous.

The evidence shows that Plaintiff was performing ordinary tasks of a deckhand on the St. Mary's Conquest – shoveling cement and using a sledgehammer. That is comparable to the *Rutherford* plaintiff, who "hurt his back while performing a task that was routinely and frequently performed by deckhands without injury." *Rutherford*, 28 F.App'x at 398. The actions required of Plaintiff while he was on the St. Mary's Conquest and in which he was engaged when he was injured – shoveling cement spillage and using a sledgehammer – were standard tasks of hard work Plaintiff had to perform as part of his job. As Plaintiff states in his brief:

> Unfortunately, multiple pieces of the unloading machinery <u>regularly failed or malfunctioned</u> as a result of inadequate and incompetent design, maintenance, and operation. Upon deposition, each and every officer and agent of [Defendant], and officer and crewmember of the ITB Bradshaw McKee/St. Mary's Conquest, admitted under oath that a combination of error on behalf of the conveyorman; malfunction of the cargo gates; and a worn, stretched out, and weak conveyor belt and skirts would <u>regularly cause overload on the conveyor belt and significant cargo spillage out of the unloading system and onto the vessel's tunnel deck</u>. Consequently, [Plaintiff] would then have to shovel the very heavy cement off of and then back onto the conveyor belt under extremely cramped and ergonomically hazardous conditions over periods extending more than 6 hours at a time. Thereafter, as a result of the malfunction of the vessel's air slide system, which could not accomplish

> the function for which [it] was intended, [Plaintiff] was required to wield a 10 pound sledge hammer over extended periods of time, while bent over, in cramped and ergonomically hazardous spaces to pound the surfaces of the vessel's cargo hold and break the cement cargo loose, so it would flow through the cargo gages and onto the cargo belt.

Dkt. No. 33, PgID 249 (emphasis added). *See also* Dkt. No. 33, Ex. 10 at 13-14 (Deposition of Abdo Alasaad, a deckhand who was working with Plaintiff on April 11, 2015) ("Because there's spillage all the time. All the boat. There's spillage from everywhere. A lot."; "Because I use the sledge hammer all the time."; "...we all the time shoveling..."). Plaintiff's argument and Mr. Alasaad's testimony reveal that the equipment malfunction and resulting spillage – and Plaintiff's shoveling and pounding due to such spillage – occurred regularly. For that reason, the Court finds that the shoveling of cement spillage and use of a sledge hammer by Plaintiff on April 11, 2015 constituted duties he performed in the ordinary course of his employment.

As to unseaworthiness, Plaintiff argues that the duties he was required to perform during the loading and unloading of the vessel were without adequate, safe, and sufficient equipment and supervision, such that the ship was unseaworthy. Citing *Waldron v. Moore-McCormack Lines, Inc.*, 386 U.S. 724, 726 (1967); *Oxley v. City of New York*, 923 F.2d 22, 24 (2d Cir. 1991). Plaintiff argues that it "is well-settled law that even a temporary or unforeseeable failure of a piece of vessel equipment

14

under proper and expected use is sufficient to establish unseaworthiness." Citing *Perkins,* 246 F.3d at 603.

The *Rutherford* court stated that the plaintiff was not entitled to relief because there was "no evidence [expert or otherwise] that the steel cable was defective or that the manner in which it was being handled was unsafe." *Id.* at 400. As noted above, the defective equipment associated with the hydraulic arms and conveyor belt were not the tools or equipment relevant to Plaintiff's injuries – the shovel and sledgehammer were. Plaintiff has not offered any evidence that the shovel or sledge hammer he used were defective in any way or that the manner in which he had to use them was unsafe. The Court notes that there is no evidence that Plaintiff: (a) was required to lift a certain weight on his shovel at any one time – he controlled how much cement he lifted in one scoop; or (b) had to use a 10 pound sledgehammer (rather than a lighter one). And, though Plaintiff and his co-workers testified that the areas in which he was working were extremely cramped, Plaintiff has failed to produce any expert evidence that any of the spaces where he was working constituted "ergonomically hazardous conditions."

The Court finds that there is no genuine dispute of material fact to support Plaintiff's claims purusant to Jones Act or general maritime law for unseaworthiness. Defendant's Motion for Summary Judgment is granted.

## IV. CONCLUSION

For the reasons stated above, **IT IS ORDERED** that Defendant's Motion for Summary Judgment [#29] is **GRANTED**. Judgment shall be entered accordingly.

IT IS ORDERED.


                        S/Denise Page Hood
                        Denise Page Hood
                        Chief Judge, United States District Court

Dated: January 16, 2018

I hereby certify that a copy of the foregoing document was served upon counsel of record on January 16, 2018, by electronic and/or ordinary mail.

                        S/LaShawn R. Saulsberry
                        Case Manager